# JOSEPH TARNOWSKY *v.* PETER SOCCI
## (SC 16992)

Sullivan, C. J., and Norcott, Katz, Palmer and Zarella, Js.

Argued April 13—officially released September 28, 2004

*James V. Somers*, with whom, on the brief, were *N. Kane Bennett*, for the appellant (defendant).

*Brenden P. Leydon*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, C. J. The defendant, Peter Socci, appeals from the judgment of the Appellate Court reversing the judgment of the trial court that the negligence action brought by the plaintiff, Joseph Tarnowsky, was barred by General Statutes § 52-584.[1] The Appellate Court held that the two year statute of limitations for bringing a negligence action does not begin to run until a plaintiff knows, or reasonably should have known, the tortfeasor's identity. We affirm the judgment of the Appellate Court.

The record reveals the following undisputed facts and procedural history. On March 14, 1997, the plaintiff

[1] General Statutes § 52-584 provides: "No action to recover damages for injury to the person, or to real or personal property, caused by negligence, or by reckless or wanton misconduct, or by malpractice of a physician, surgeon, dentist, podiatrist, chiropractor, hospital or sanatorium, shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the date of the act or omission complained of, except that a counterclaim may be interposed in any such action any time before the pleadings in such action are finally closed."

sustained injuries when he slipped and fell on an icy sidewalk on property in Darien. In December, 1998, the plaintiff timely commenced separate negligence actions against People's Bank (bank), the owner of the property, and Jana, LLC (Jana), the tenant of the property. Thereafter, the plaintiff learned through the formal discovery process that the defendant had been responsible for removing ice and snow from the bank's property and, on March 10, 2000, commenced this negligence action against him. On August 9, 2000, the defendant filed an apportionment complaint against the bank, Jana and Leggat McCall Properties Management of Connecticut, Inc. (Leggat). The plaintiff later amended his complaint, pursuant to General Statutes § 52-102b,[2] to assert a direct claim against Leggat. The defendant and Leggat then filed separate motions for summary judgment, claiming that the plaintiff's claim was barred by § 52-584. The trial court, *D'Andrea, J.,* denied Leggat's motion for summary judgment after concluding that there existed "a genuine issue of [material] fact as to when the plaintiff discovered, or reasonably should have discovered, the existence of the defendant Peter Socci as a viable defendant . . . ." Subsequently, the trial court, *Hon. William B. Lewis,* judge trial referee, granted the defendant's motion for summary judgment without referring to Judge D'Andrea's decision on Leg-

[2] General Statutes § 52-102b (a) provides: "A defendant in any civil action to which section 52-572h applies may serve a writ, summons and complaint upon a person not a party to the action who is or may be liable pursuant to said section for a proportionate share of the plaintiff's damages in which case the demand for relief shall seek an apportionment of liability. Any such writ, summons and complaint, hereinafter called the apportionment complaint, shall be served within one hundred twenty days of the return date specified in the plaintiff's original complaint. The defendant filing an apportionment complaint shall serve a copy of such apportionment complaint on all parties to the original action in accordance with the rules of practice of the Superior Court on or before the return date specified in the apportionment complaint. The person upon whom the apportionment complaint is served, hereinafter called the apportionment defendant, shall be a party for all purposes, including all purposes under section 52-572h."

gat's motion for summary judgment. The plaintiff appealed from Judge Lewis' decision, and the Appellate Court reversed the judgment of the trial court, holding that "actual or constructive knowledge of the identity of a tortfeasor is an essential element of a claimant's action for damages for negligently inflicted injuries." *Tarnowsky* v. *Socci*, 75 Conn. App. 560, 569, 816 A.2d 728 (2003). This court granted certification, limited to the following issue: "Did the Appellate Court properly conclude that the plaintiff's action against the named defendant was not barred by General Statutes § 52-584?" *Tarnowsky* v. *Socci*, 263 Conn. 921, 922, 822 A.2d 245 (2003).

As a preliminary matter, we set forth the standard of review. "Issues of statutory construction raise questions of law, over which we exercise plenary review." (Internal quotation marks omitted.) *Wiseman* v. *Armstrong*, 269 Conn. 802, 809, 850 A.2d 114 (2004).[3] We begin our analysis with the language of the statute. Section 52-584 provides in relevant part: "No action to recover damages for injury to the person . . . caused by negligence . . . shall be brought but within two years from the date when the injury is first sustained or discovered or in the exercise of reasonable care should have been discovered, and except that no such action may be brought more than three years from the

[3] The legislature recently enacted No. 03-154, § 1, of the 2003 Public Acts, which provides: "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." "The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." *Carmel Hollow Associates Ltd.* v. *Bethlehem*, 269 Conn. 120, 134 n.19, 848 A.2d 451 (2004). Because we conclude that the word "injury," as used in § 52-584, is susceptible to more than one reasonable interpretation and is therefore ambiguous, we are not restricted by Public Acts 2003, No. 03-154, § 1, from considering extratextual evidence in interpreting the statute.

date of the act or omission complained of . . . ." We previously have held that, as used in § 52-584, "the term 'injury' is synonymous with 'legal injury' or 'actionable harm.' 'Actionable harm' occurs when the plaintiff discovers, or in the exercise of reasonable care, should have discovered the essential elements of a cause of action. *Catz* v. *Rubenstein*, [201 Conn. 39, 44, 513 A.2d 98 (1986)]. A breach of duty by the defendant and a causal connection between the defendant's breach of duty and the resulting harm to the plaintiff are essential elements of a cause of action in negligence; they are therefore necessary ingredients for ' "actionable harm." ' Id. Furthermore, 'actionable harm' may occur when the plaintiff has knowledge of facts that would put a reasonable person on notice of the nature and extent of an injury, and that the injury was caused by the negligent conduct of another. Id., 47. In this regard, the harm complained of need not have reached its fullest manifestation in order for the limitation period to begin to run; a party need only have suffered some form of ' "actionable harm." ' Id., 43, 45. Finally, the determination of when a plaintiff in the exercise of reasonable care should have discovered 'actionable harm' is ordinarily a question reserved for the trier of fact." *Lagassey* v. *State*, 268 Conn. 723, 748–49, 846 A.2d 831 (2004).

The defendant argues that knowledge of the identity of the tortfeasor is not an essential element of a cause of action and, therefore, under *Catz*, such knowledge is not required in order for the plaintiff to have suffered actionable harm. We disagree.

Whether a plaintiff has suffered actionable harm before discovering the tortfeasor's identity is an issue of first impression for this court. In *Catz*, we concluded that the discovery of the causal connection between the breach of duty and the injury was an essential element of a cause of action, but had no occasion to

address the specific question before us here. See *Catz v. Rubenstein,* supra, 201 Conn. 44. Prior to its decision in the present case, the Appellate Court had addressed this question, but only indirectly. In *Peerless Ins. Co. v. Tucciarone,* 48 Conn. App. 160, 162, 708 A.2d 611 (1998), the tenants of a commercial property and their insurance carriers brought an action against the defendant commercial property owners, who impleaded and brought a product liability claim against the manufacturer of a defective lighting product that had caused a fire on the property. The manufacturer claimed that the action was barred by General Statutes § 52-577a (a).[4] The trial court agreed and rendered summary judgment in favor of the manufacturer. Id., 163. On appeal, the Appellate Court affirmed the judgment of the trial court, reasoning that the owners, exercising due diligence, could have discovered the cause of the fire and the identity of the manufacturer before the expiration of the statute of limitations because the fire marshal's report, issued soon after the fire, contained that information. Id., 167. Thus, as the Appellate Court stated in the present case, it had "implicitly decided [in *Peerless Ins. Co.*] . . . that actual or constructive knowledge of the identity of a tortfeasor is an essential element of a claimant's action for damages for negligently inflicted injuries." *Tarnowsky v. Socci,* supra, 75 Conn. App. 569.

The decisions of our sibling states on the question before us are divided. The majority of those jurisdictions have held, however, that a cause of action does not accrue until the plaintiff has discovered or should

---

[4] General Statutes § 52-577a (a) provides in relevant part: "No product liability claim . . . shall be brought but within three years from the date when the injury . . . is first sustained or discovered or in the exercise of reasonable care should have been discovered except that, subject to subsections (c), (d) and (e), no such action may be brought against any party nor may any party be impleaded pursuant to subsection (b) later than ten years from the date that the party last parted with possession or control of the product."

have discovered the identity of the tortfeasor. See, e.g., *Siragusa* v. *Brown*, 114 Nev. 1384, 1393–94, 971 P.2d 801 (1998) ("trier of fact must determine whether [plaintiff's] discovery of [defendant's] involvement was delayed due to her alleged attempts to conceal her role and whether [plaintiff] could have, nonetheless, discovered her identity earlier through diligent inquiry"); *Adams* v. *Oregon State Police*, 289 Or. 233, 239, 611 P.2d 1153 (1980) (statute of limitations "does not commence to run until plaintiff has a reasonable opportunity to discover his injury and *the identity of the party responsible for that injury*" [emphasis added]); *Wyatt* v. *A-Best, Co.*, 910 S.W.2d 851, 855 (Tenn. Crim. App. 1995) ("breach of a legally cognizable duty occurs when plaintiff discovers or 'reasonably should have discovered, (1) the occasion, the manner and means by which a breach of duty occurred that produced . . . injury; and (2) *the identity of the defendant who breached the duty*' " [emphasis added]); *Spitler* v. *Dean*, 148 Wis. 2d 630, 636, 436 N.W.2d 308 (1989) (plaintiff's "cause of action did not accrue *until [he] knew the identity of the defendant*, or in the exercise of reasonable diligence, should have discovered the identity of the defendant" [emphasis added]).[5]

---

[5] See also *Lawhon* v. *L.B.J. Institutional Supply, Inc.*, 159 Ariz. 179, 183, 765 P.2d 1003 (App. 1988); *Pennwalt Corp.* v. *Nasios*, 314 Md. 433, 453, 550 A.2d 1155 (1988); *Raymond* v. *Eli Lilly & Co.*, 117 N.H. 164, 170–71, 371 A.2d 170 (1977); *O'Keeffe* v. *Snyder*, 83 N.J. 478, 493, 416 A.2d 862 (1980); *Norgard* v. *Brush Wellman, Inc.*, 95 Ohio St. 3d 165, 167–69, 766 N.E.2d 977 (2002); *Gaston* v. *Parsons*, 318 Or. 247, 255–56, 864 P.2d 1319 (1994); *Anthony* v. *Abbott Laboratories*, 490 A.2d 43, 46 (R.I. 1985); *Aragon* v. *Clover Club Foods Co.*, 857 P.2d 250, 253 (Utah App. 1993); *Orear* v. *International Paint Co.*, 59 Wash. App. 249, 255–56, 796 P.2d 759, review denied, 116 Wash. 2d 1024, 812 P.2d 103 (1990); *Thompson* v. *Branches-Domestic Violence Shelter of Huntington, West Virginia, Inc.*, 207 W. Va. 479, 485–86, 534 S.E.2d 33, cert. denied, 531 U.S. 1055, 121 S. Ct. 663, 148 L. Ed. 2d 565 (2000); *Sawyer* v. *Midelfort*, 227 Wis. 2d 124, 156, 595 N.W.2d 423 (1999). But see *Russell* v. *Attco, Inc.*, 82 Haw. 461, 463–65, 923 P.2d 403 (1996); *Wells* v. *Travis*, 284 Ill. App. 3d 282, 287, 672 N.E.2d 789 (1996); *Krasnow* v. *Allen*, 29 Mass. App. 562, 569–70, 562 N.E.2d 1375 (1990), cert. denied, 409 Mass. 1102, 566 N.E.2d 1131 (1991); *Smith* v. *Sinai Hospital of Detroit*, 152 Mich. App. 716, 726,

We agree with the Appellate Court and the majority of our sibling jurisdictions that there is no principled reason to distinguish between, on the one hand, the discovery of a breach of duty or the discovery of a causal connection between the breach of duty and the injury and, on the other hand, the discovery of the identity of the tortfeasor, for purposes of the actionable harm doctrine. First, the very phrase "actionable harm" suggests that knowledge of the identity of the tortfeasor is one of its elements. The defendant makes no claim that an injury is "actionable," i.e., that an action may be brought, when a specific defendant has not been identified.[6] See *Lagassey* v. *State*, supra, 268 Conn. 743 ("the limitation period in § 52-584 does not begin to run until a plaintiff has knowledge or in the exercise of reasonable care should have had knowledge of sufficient facts to bring a cause of action against a defendant").

394 N.W.2d 82 (1986); *Staiano* v. *Johns Manville Corp.*, 304 Pa. Super. 280, 287–88, 450 A.2d 681 (1982); *Mellon Service Co.* v. *Touche Ross & Co.*, 17 S.W.3d 432, 436 (Tex. Civ. App. 2000); *Nowotny* v. *L & B Contract Industries, Inc.*, 933 P.2d 452, 457–58 (Wyo. 1997).

[6] We note that General Statutes § 52-68 (a) provides that the Superior Court may make an order "in regard to the notice which shall be given of the institution or pendency of all complaints . . . which may be brought to or pending in the Superior Court, when the adverse party, or any persons so interested therein that they ought to be made parties thereto, reside out of the state, or when the names or residences of any such persons in interest are unknown to the party instituting the proceeding." Neither party argues that this statute would have allowed the plaintiff to bring suit against the defendant before learning of his identity. Indeed, the parties do not address § 52-68 at all in their briefs. Our research reveals that this statute generally has not been used as a substitute for making personal service on unidentified tortfeasors. But see *Eskin* v. *Castiglia*, 253 Conn. 516, 521, 753 A.2d 927 (2000) (trial court granted plaintiff permission to serve process on unidentified defendant by publication pursuant to § 52-68).

In *Ayala* v. *Smith*, 236 Conn. 89, 91, 671 A.2d 345 (1996), the plaintiff urged this court "to adopt a rule that would permit a party to institute and maintain an action against an unidentified person, under a fictitious name, for a reasonable time period within which to discover that person's identity." We did not reach the merits of the claim, however, because we determined that the case was moot. Id., 93.

We note that General Statutes § 52-45a provides that "[c]ivil actions shall be commenced by legal process consisting of a writ of summons or attachment, *describing the parties* . . . ." (Emphasis added.) Unlike some jurisdictions, Connecticut has no statutory provision for suing an unidentified "John Doe" defendant.[7] In any event, a plaintiff who has incurred an actionable injury and knows the identity of one or more of the tortfeasors, but has no reason to suspect the existence of additional responsible parties, clearly cannot bring an action against the unknown parties until he discovers their existence. In such cases, the blameless failure to discover the existence of the unknown tortfeasors is tantamount to a blameless failure to discover a causal connection between the tortfeasor's breach of duty and the injury, a failure that clearly tolls the statute of limitations. *Catz* v. *Rubenstein,* supra, 201 Conn. 44.

Second, the legislature's purpose in distinguishing "injury," or actionable harm, from "the act or omission complained of" in § 52-284, and providing a three year statute of repose, was to avoid the "draconian effect"; *Lagassey* v. *State,* supra, 268 Conn. 742–43; of running the two year limitation period from the date of the defendant's negligence in cases in which the plaintiff is unable to bring an action because he could not discover an essential jurisdictional fact, despite the exercise of reasonable care. Id., 743. To hold that a claimant forfeits a cause of action because he is unable to identify the tortfeasor, despite reasonable efforts to do so, would undermine this legislative purpose. Moreover, we agree with the Appellate Court's statement in the present case that such a holding would be inconsistent with this state's general policy of allowing meritorious

---

[7] For example, California law provides that "[w]hen the plaintiff is ignorant of the name of a defendant, he must state that fact in the complaint . . . and such defendant may be designated . . . by any name . . . ." Cal. Civ. Proc. Code § 474 (Deering Sup. 2004).

claims to be vindicated in the courts. See *Tarnowsky* v. *Socci*, supra, 75 Conn. App. 569.

The defendant claims, however, that there is a distinction between the discovery of "actionable harm" and the discovery of the identity of the tortfeasor. He relies primarily on the California Supreme Court's decision in *Norgart* v. *Upjohn Co.*, 21 Cal. 4th 383, 981 P.2d 79, 87 Cal. Rptr. 2d 453 (1999), in support of this claim. In *Norgart*, the court considered the plaintiffs' claim that the statute of limitations was tolled by their failure to discover the identify of the tortfeasor. The California Appellate Court was split on the issue. One court had held that "under the discovery rule, a plaintiff discovers, or has reason to discover, a cause of action as to all defendants when he at least suspects, or has reason to suspect, a factual basis for its elements as to *any* defendant." (Emphasis added.) Id., 393, citing *Bristol-Myers Squibb Co.* v. *Superior Court*, 32 Cal. App. 4th 959, 38 Cal. Rptr. 2d 298 (1995). The California Appellate Court in *Norgart* had held to the contrary that, "when 'there are potentially multiple' 'unrelated' 'concurring causes,' a plaintiff discovers, or has reason to discover, a cause of action 'based on a particular act of wrongdoing' by a particular defendant, only when he at least suspects, or has reason to suspect, that act of wrongdoing by *that* defendant." (Emphasis added.) *Norgart* v. *Upjohn Co.*, supra, 394. The California Supreme Court noted, in the language relied on by the defendant in the present case, that it previously had recognized that "the plaintiff may discover, or have reason to discover, the cause of action even if he does not suspect, or have reason to suspect, the identity of the defendant. . . . That is because the identity of the defendant is not an element of any cause of action. . . . It follows that failure to discover, or have reason to discover, the identity of the defendant does not postpone the accrual of a cause of action, whereas a like failure concerning

the cause of action itself does. Although never fully articulated, the rationale for distinguishing between ignorance of the defendant and ignorance of the cause of action itself appears to be premised on a common-sense assumption that once the plaintiff is aware of the latter, he normally has sufficient opportunity, within the applicable limitations period, to discover the identity of the former. . . . He may often effectively [extend] the limitations period in question by the filing and amendment of a Doe complaint and invocation of the relation-back doctrine. . . . Where he knows the identity of at least one defendant . . . [he] must proceed thus." (Citations omitted; internal quotation marks omitted.) Id., 399.

The court in *Norgart* rejected the plaintiffs' claim that their failure to discover the identity of a tortfeasor tolled the statute of limitations as to that tortfeasor. In doing so, however, it did not reject the trial court's holding that "a plaintiff discovers, or has reason to discover, a cause of action based on a particular act of wrongdoing by a particular defendant, only when he at least suspects, or has reason to suspect, that act of wrongdoing by that defendant." (Internal quotation marks omitted.) Id., 406. Instead, it concluded that, even if that principle were correct, it was not applicable because the plaintiffs had had reason at least to suspect both the existence and the identity of the unidentified tortfeasor at the time that the cause of action had accrued as to the identified tortfeasors. Id., 407.

Thus, the court in *Norgart* did not squarely address the legal question before us in the present case. Instead, it resolved the plaintiffs' claim on the basis of factual determinations that have not yet been made here. Moreover, to the extent that the language cited by the defendant suggests that California has a stricter rule than the rule we adopt in this case, we are not persuaded that such a rule is consistent with our statutory scheme.

California law permits plaintiffs to file "John Doe" complaints against unidentified defendants within the applicable statute of limitations period and grants an additional three years from the date of filing to identify and serve process on such defendants. Id., 408. Thus, in California, a plaintiff who suspects the existence of a defendant but cannot identify him, can ensure that he has at least three years to discover that identity. This fact underlies the court's statement in *Norgart* that "once the plaintiff is aware of the [cause of action], he normally has sufficient opportunity, within the applicable limitations period, to discover the identity of the [defendant]." Id., 399. In Connecticut, there is no such rule. Moreover, this statement in *Norgart* appears to be premised on the assumption that the plaintiff has reason to suspect the *existence* of a specific tortfeasor. As we have noted, it is not clear that the California courts would apply the same analysis in cases where the plaintiff had no reason to suspect another tortfeasor's involvement.

The defendant also argues that our interpretation "turns [§ 52-584] on its head" by making the three year repose period the rule rather than the exception. We disagree. Just as the rule that we adopted in *Catz* applies only when the plaintiff did not know and reasonably could not have known of the causal connection between the breach of duty and the injury, the rule that we adopt in this case applies only when the plaintiff did not know, and reasonably could not have known, the identity of the tortfeasor. We trust that such cases are the exception, not the general rule. For the same reason, we are not persuaded by the defendant's argument that our interpretation will inject "an additional issue of fact . . . into *every* negligence case that involves a statute of limitations defense." (Emphasis added.)

We also are not persuaded by the defendant's argument that our interpretation undermines the objectives

of statutes of limitations and repose. We fully recognize that "[a] statute of limitation or of repose is designed to (1) prevent the unexpected enforcement of stale and fraudulent claims by allowing persons after the lapse of a reasonable time, to plan their affairs with a reasonable degree of certainty, free from the disruptive burden of protracted and unknown potential liability, and (2) to aid in the search for truth that may be impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." (Internal quotation marks omitted.) *DeLeo* v. *Nusbaum*, 263 Conn. 588, 596, 821 A.2d 744 (2003). As in *Catz*, our decision in this case merely recognizes that in cases in which a plaintiff, through no fault of his own and despite the exercise of reasonable care, is ignorant of an essential jurisdictional fact, the three year repose period represents a legislative compromise between the public policy of protecting individuals from the uncertainty that could result from unduly protracted time limits for filing legal claims and the public policy favoring the vindication of meritorious claims in the courts.

Finally, the defendant claims that the legislative history and circumstances surrounding the enactment of § 52-584 support his argument that the statute of limitations bars the plaintiff's claim. The defendant argues that there is not "even the least shred of any legislative intent to delay the accrual of a cause of action until the plaintiff's discovery of a defendant's identity." We are not persuaded. We repeatedly have expressed our reluctance to rely on the absence of legislative history as supporting a particular interpretation of a statute. See *State* v. *Reynolds*, 264 Conn. 1, 79, 836 A.2d 224 (2003), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); *State* v. *Kirsch*, 263 Conn. 390, 420, 820 A.2d 236 (2003); *Spears* v. *Garcia*, 263 Conn. 22, 34, 818 A.2d 37 (2003).

We conclude that the two year statute of limitations set forth in § 52-584 does not begin to run until a plaintiff knows, or reasonably should have known, the identity of the tortfeasor. We emphasize that a plaintiff's ignorance of the identity of a tortfeasor will not excuse the plaintiff's failure to bring a negligence action within three years of the date of the act or omission complained of. When the plaintiff in the present case knew or should have known the defendant's identity is a question to be determined by the fact finder on remand. See *State* v. *Lagassey*, supra, 268 Conn. 752.

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.